IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02772-MDB

THE ESTATE OF JAY PHILIP PRITCHARD, by and through its personal representative Nola Mawhinney,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF PUEBLO, COLORADO,
DAVID J. LUCERO, SHERIFF OF PUEBLO COUNTY, in his official capacity
WELLINGTON DUPLESSIS, in his individual capacity,
ANDREW WARD, in his individual capacity,
NAPHCARE, INC., an Alabama Corporation,
STACY VALDEZ, in her individual capacity,
TAMMY LABORDE, in her capacity, and
ACASHA KERR, in her individual capacity,

    Defendants.

_____

## COUNTY DEFENDANTS' MOTION TO DISMISS
_____

Defendants BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF PUEBLO, COLORADO ("BOCC"); DAVID J. LUCERO, SHERIFF OF PUEBLO COUNTY, in his official capacity; WELLINGTON DUPLESSIS, in his individual capacity; and ANDREW WARD, in his individual capacity (collectively referred to as "County Defendants"), hereby submit this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and state as follows.

### Conferral Pursuant to M.D.B. Practice Standard VII.A.

Undersigned counsel certifies that she discussed this motion with counsel for Plaintiff and is authorized to state that Plaintiff opposes this motion.

**Nature of Case and Procedural Background**

Plaintiff's Complaint, filed on October 23, 2023, asserts four claims against Defendants Board of County Commissioners of the County of Pueblo, Colorado ("BOCC"); Sheriff Lucero; Deputy Duplessis; Deputy Ward; Naphcare, Inc.; and Naphcare employees Valdez, Laborde, and Kerr. Doc. 1. The claims are as follows:

| No. | Claim | Against |
| --- | --- | --- |
| First | 42 U.S.C. § 1983 – 14th Amendment "Unconstitutional Medical Care" | Defendants Valdez, Laborde, and Kerr |
| Second | 42 U.S.C. § 1983 – 14th Amendment "Unconstitutional Policies" | Defendants Naphcare, BOCC, Sheriff Lucero |
| Third | C.R.S. § 13-21-131 – "Cruel and Unusual Punishment and Deprivation of Due Process" | Defendants Duplessis and Ward |
| Fourth | Negligence – Survival Action | Defendants Naphcare, Valdez, Kerr and Laborde |

Naphcare Defendants filed a Partial Motion to Dismiss on December 18, 2023 (Doc. 19), asserting that both claims asserted against them pursuant to 42 U.S.C. § 1983 should be dismissed for failure to state a claim for relief.

This motion seeks dismissal of the claims as asserted against County Defendants.

**Factual Allegations**

The Complaint alleges that, on October 26, 2021, Pueblo Police Officers responded to a Ramada Inn following threats made by Jay Pritchard, who had been living at the Ramada Inn for at least five months. The threats were made both to himself and others. Doc. 1 at ¶¶ 44–47.

Pueblo Police Officers returned to the Ramada Inn on October 28, 2021, and attempted to make contact with Mr. Pritchard in the parking lot, but he "accelerated away from the officers and fled the scene." *Id.* at ¶¶ 51–52. However, later that day, Pueblo Police Officers contacted Mr. Pritchard in a different parking lot and, "concerned about Mr. Pritchard's 'possible mental instability,'" used a pin maneuver and then "forcibly extracted Mr. Pritchard from his vehicle,

2

tased, and arrested him." Mr. Pritchard immediately complained of "intense pain in his hip" and he was taken to Parkview Hospital, where he was cleared for incarceration at the jail with directives to follow up with a primary care provider, return to the ER with new or worsening symptoms or if his leg felt warm, tender and painful, and to call 911 if he could not walk. *Id*. at ¶¶ 54–56.

Mr. Pritchard was brought to the judicial intake center by Pueblo Police Officer Skyler Laver, who was involved with his arrest and was allegedly "aware of the mental health issues Mr. Pritchard was suffering from and the prior suicide threat." However, on intake paperwork, Officer Laver answered "no" to whether Mr. Pritchard had "demonstrated any behaviors which may suggest mental illness." Plaintiff alleges that Officer Laver answered other questions on the paperwork inaccurately and that the answers "were clearly false and jeopardized the safety of Mr. Pritchard." *Id*. at ¶¶ 58–61.

Nevertheless, Mr. Pritchard, who was in a wheelchair, stated during a medical intake screening that "I think about suicide every day and no one helps me." He refused to answer additional questions. This statement was noted by both Pueblo County Sheriff's Deputies and Naphcare employees.[1] Mr. Pritchard was "placed in a cell with a concrete slab and a toilet that was several feet away" and undressed and given a suicide smock. Plaintiff alleges that Mr. Pritchard was unable to walk and "was left completely naked, sitting on the slab with the folded-up gown to his left and a blanket on his right." Mr. Pritchard did not use the toilet and instead relieved himself on the floor and the bench he was sitting on. *Id*. at ¶¶ 63–70.

On October 30, 2021, Mr. Pritchard was given pants and a shirt and was assisted by Deputy

---

[1] Per the Complaint, on January 26, 2021, the County and Naphcare, Inc, executed a Health Services Agreement and the same was approved via Resolution No. 21-024 by the Board of County Commissioners. The Agreement allows Naphcare to provide inmate medical services for the Pueblo County Detention Facilities. Doc. 1 at ¶ 39.

3

Ward into a wheelchair and given a shower. Mr. Pritchard allegedly told Deputy Ward that his hip was broken and Deputy Ward "watched Mr. Pritchard scream in pain while he attempted to shower himself, while Dep. Ward encouraged Pritchard to not put weight on his leg while trying to move and stand." *Id*. at ¶¶ 69–73.

Mr. Pritchard was then brought to Defendant Valdez for an assessment which was allegedly deficient and ignored risks concerning Mr. Pritchard's mental health issues. Deputy Ward and another deputy then transported Mr. Pritchard to the Pueblo County Detention Facility ("PCDF") while he was "screaming in pain." *Id*. at ¶¶ 74–86. A nurse practitioner attempted to conduct a psychiatric evaluation but noted that Mr. Pritchard "very clearly declined." *Id*. at ¶ 87.

On October 31, 2021, Defendant Kerr assessed Mr. Pritchard and noted him to be "calm, cooperative" with "appropriate speech" though he "could not get up off the cell bench due to pain in his leg." Mr. Pritchard allegedly told her "'I am not suicidal, I am just tired, the cops were chasing me, I just needed to calm down and realize I am ok.'" Mr. Pritchard was then discontinued from suicide observation and placed into general population. *Id*. at ¶¶ 88–89.

On November 1, 2021, Defendant Laborde met with Mr. Pritchard and noted that he had "pressured speech and was irritable, avoidant and tense." Plaintiff alleges that this was a "clear downturn" in Mr. Pritchard's condition but noted Defendant Laborde's note in which Mr. Pritchard stated he was "just upset about my hip" and was in pain but "I am not suicidal." *Id.* at ¶¶ 92–93.

On November 1, 2021, Deputy Duplessis was working at PCDF and "[u]pon information and belief [he] was aware of Mr. Pritchard's suicidal statements and custodial history." Mr. Pritchard asked for a telephone and Deputy Duplessis "provided a telephone with a cord that was dozens of feet long" and left Mr. Pritchard alone in his cell. Less than half an hour later, PCSO Detention Specialist Elizabeth Ortiz was unable to see Mr. Pritchard in his cell. Two minutes later,

4

PCSO Deputies entered the cell and found Mr. Pritchard, who had wrapped the cord around his neck and hanged himself behind the wall in his cell. *Id*. at ¶¶ 94–97.

Life-saving measures were initiated and Mr. Pritchard was taken to Parkview Hospital but passed away on November 4, 2021. Imaging studies done at Parkview indicated a broken femur. *Id*. at ¶¶ 98–99.

The Complaint includes numerous allegations regarding policies and procedures of both the PCSO and Naphcare, including suicide assessments and observation periods. Additionally, the Complaint details an allegedly deficient emergency response, including failing to have a cut-down tool on every tier, failing to call for an ambulance at the same time that the code for Mr. Pritchard was called, and having "few medical personnel involved in the emergency response, which resulted in chaos and insufficient care." *Id*. at ¶¶ 123–125.

## Standard of Review

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, a court first discards those averments in the complaint that are merely legal conclusions or "naked assertions" devoid of "further factual enhancement." *Id.* at 678–79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). The court then takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, or that are more likely explained by a defendant's lawful conduct, it "stops short of the line between possibility and plausibility"

and fails to suggest a plausible claim for relief. *Twombly*, 550 U.S. at 567; *Iqbal*, 556 U.S. at 680; *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## Argument and Authority

**A.     Plaintiff's Second Claim for Relief Must be Dismissed as to County Defendants**

1.     <u>Applicable Law</u>

Plaintiff's second claim for relief, brought pursuant to 42 U.S.C. § 1983, is for "Unconstitutional Policies" and is asserted against Defendants Naphcare, BOCC, and Sheriff Lucero.

*Respondeat superior* liability is not available against an entity under Section 1983. *Board of the County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997). A municipality cannot be held liable under Section 1983 solely because it employs a tortfeasor. *See, e.g.*, *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978). In order to establish *Monell* liability, a plaintiff must show "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bryan County*, 520 U.S. at 403. A plaintiff must also show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769 (10th Cir. 2013). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

The Tenth Circuit has noted that a policy or custom may take different forms beyond official written policies, including "an informal custom 'amount[ing] to' a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well

6

settled as to constitute a custom or usage with the force of law.'" *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)). It may also take the form of "decisions of employees with final policymaking authority" or through "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Id*. It may also take the form of "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Id*.

With respect to training, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (A "policy" of "inadequate training" . . . "is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). Thus, a municipality's failure to train its employees may serve as the basis for §1983 liability only where that failure amounts to deliberate indifference to the rights of citizens. *City of Canton*, 489 U.S. at 388–89.

Deliberate indifference involves an obvious need for more or different training where the inadequacy of training is likely to result in the violation of constitutional rights. *City of Canton*, 489 U.S. at 390. "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. "Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program causing constitutional violations." *Connick*, 131 S. Ct. at 1360. Additionally, the identified deficiency must

7

be closely related to the plaintiff's actual injury. *City of Canton*, 489 U.S. at 385. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id*. at 390-91 (internal citation omitted).

    2.    <u>Application</u>

Here, Plaintiff appears to allege both formal and informal policies, a failure to train and supervise and, in the case of County Defendants, liability based on a non-delegable duty to provide health care to detainees.

The Complaint establishes both (1) that Mr. Pritchard was placed on suicide observation after making a statement indicating an intent to harm himself; and (2) that he was then taken off suicide observation after making not one, but two, clear statements that he did not intend to harm himself. These facts alone mitigate against the causative nature of any policy or custom that is alleged to be the basis for *Monell* liability.

Plaintiff admits that the County did have a suicide prevention policy but states that "the actual policy, practice, and widespread custom was to ignore the written policy." Doc. 1 at ¶ 160. However, the allegations do not demonstrate that the policy was ignored. Rather, Plaintiff refers to general standards published by national correctional organizations and then claims that *those* standards were not met. Nor, indeed, would failure to adhere to a policy equate to a constitutional violation. *See Ernst v. Creek County Public Facilities Authority*, 697 F. App'x 931, 934 (10th Cir. 2017).

To the extent that the Complaint alleges that the failure to have a physician or psychiatrist conduct suicide evaluations was the result of a County policy, there is no such constitutional requirement. *Id*. ("Even assuming for purposes of argument that the jail had a 'policy' of allowing

8

LPNs and LPCs to conduct suicide evaluations, Ernst provides no authority (and we are aware of none) for the proposition that an inmate's Eighth Amendment rights are violated if a medical professional other than a licensed physician or psychiatrist makes suicide watch determinations.")

Plaintiff's Complaint does not include any other incidents that are alleged to have resulted in similar constitutional violations or that would have provided notice of such violations. Even if such incidents had been included, however, isolated incidents are not sufficient to plausibly allege a *Monell* claim. *See, e.g., Handy v. Russell*, No. 12-cv-2285-BNB, 2012 WL 5869161, *2 (D. Colo. Nov. 19, 2012) (plaintiff "cannot state a claim for relief under § 1983 against a municipality merely by pointing to isolated incidents."). Although the Complaint references statistics concerning jail suicide (Doc. 1 at ¶¶ 36–38), such generalized information has no bearing on the question of County Defendants' *Monell* liability.

Furthermore, although Plaintiff generically references "a lack of training and supervision surrounding the risks of inmate self-harm," no specific deficiencies concerning training or supervision are alleged in the Complaint. To the extent the allegations regarding a "deficient emergency response" are intended to supply this detail (Doc. 1 at ¶¶ 122–125), there is no indication that any of these issues (all of which came into play after Mr. Pritchard's suicide) were the moving force behind any constitutional violation. Nor does the conclusory statement that "[t]hese delays in proper care of Mr. Pritchard resulted in the exacerbation of his injuries and contributed to his ultimate death" (*id*. at ¶ 126) suffice to remedy this problem. No detail is provided that would plausibly explain how there would have been a different outcome in the absence of these alleged deficiencies.

Plaintiff has also failed to plead sufficient factual support for the claim that County Defendants had actual or constructive notice that its allegedly improper training was deficient. As

noted above, there are no allegations regarding similar incidents at PCDF that would provide notice of such deficiency.

Finally, the Complaint alleges that Defendants BOCC and Sheriff Lucero are non-delegably liable for constitutionally deficient policies of Naphcare. However, even assuming the viability of the non-delegable duty doctrine,[2] the allegations concerning Naphcare's policies and procedures suffer from the same problems as the allegations against County Defendants. First, the factual allegations concerning Mr. Pritchard's placement and then removal from suicide observation based on statements he made stand in contrast to allegations that Defendants did not abide by their own policies – as opposed to national standards – concerning assessment for suicide risk. Second, the Complaint does not include any details as to any other incidents at the PCDF (or at other facilities where medical and mental health care is provided by Naphcare) that are sufficiently similar to Mr. Pritchard's case such as would provide notice to either County Defendants or Naphcare Defendants of constitutionally deficient care. Finally, there is no constitutional requirement that only physicians or psychiatrists conduct suicide evaluations.

County Defendants also note that Naphcare Defendants have filed a Motion for Partial Dismissal similarly arguing that the *Monell* claim as asserted against them should be dismissed. Doc. 19.

Accordingly, for the reasons set forth above, Plaintiff's *Monell* claim as asserted against County Defendants must be dismissed.

---

[2]   Neither the United States Supreme Court nor the Tenth Circuit have adopted the non-delegable duty doctrine, though County Defendants note that the United States District Court for the District of Colorado has recognized the doctrine. *See Rogacki v. Jefferson County*, No. 1:21-cv-02281-CNS-KLM, 2022 WL 16551336 *13 (D. Colo. Oct. 31, 2022) (noting that "[n]umerous courts have adopted and applied the non-delegable duty doctrine in similar § 1983 cases"). For purposes of this Motion to Dismiss, County Defendants do not challenge the viability of such doctrine.

## B. Plaintiff's Third Claim for Relief Must be Dismissed as to County Defendants

### 1. Applicable Law

Plaintiff's third claim for relief, asserted pursuant to C.R.S. § 13-21-131, is for "Cruel and Unusual Punishment and Deprivation of Due Process" and is asserted against Defendants Ward and Duplessis. According to the Complaint, the specific nature of the violations relates to a failure to provide adequate medical and mental health care. Doc. 1 at ¶ 176.[3]

Given the recent passage of C.R.S. § 13-21-131, there is little in the way of interpreting case law such as would assist the court and the parties in understanding the parameters of claims brought pursuant to the statute. However, it is well settled that, in such cases, Colorado courts may turn to federal case law for assistance. *See People v. Dunaway*, 88 P.3d 619, 630 (Colo. 2004) ("Where the analogous federal and state constitutional provisions are textually identical, we have always viewed cases interpreting the federal constitutional provision as persuasive authority.").

Although "[p]rison and jail officials, as well as the municipal entities that employ them, cannot absolutely guarantee the safety of their prisoners" they still have "a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity." *Cox v. Glanz*, 800 F.3d 1231, 1247-48 (10th Cir. 2015) (internal quotation marks omitted).

Claims arising out of a jail suicide are treated as claims for deliberate indifference to a serious medical need. *Id*. at 1248. Such claims are comprised of both objective and subjective components. Objectively, a medical need qualifies "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

---

[3] Although the Complaint asserts this claim as both an Eighth Amendment claim and a Fourteenth Amendment claim, only the Fourteenth Amendment is implicated due to Mr. Pritchard's pretrial status. *See Howard v. Dickerson*, 34 F.3d 978, 980 (10th Cir. 1994) ("The constitutional protection against deliberate indifference to a prisoner's serious medical needs … applies to pretrial detainees through the due process clause of the Fourteenth Amendment.").

recognize the necessity for a doctor's attention." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "The subjective component requires Plaintiff to establish that a medical official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Strain v. Regalado*, 977 F.3d 984, 990 (10th Cir. 2020) (internal quotation marks omitted). In the context of suicide, the Tenth Circuit has discussed the need for an awareness of the "substantial risk of suicide" by a specific inmate. *Cox*, 800 F.3d at 1251 ("Thus, Ms. Cox had the burden of establishing that Sheriff Glanz possessed no less than this particularized mental state with respect to Mr. Jernegan.").

    2.    <u>Application</u>

Assuming for purposes of this Motion to Dismiss that death by suicide is a sufficiently serious harm to meet the objective component of a deliberate indifference claim, the Complaint nevertheless fails to plausibly allege the subjective components of such claim with respect to Deputies Ward and Duplessis.

The allegations against Deputy Ward are that he assisted Mr. Pritchard with getting into a wheelchair and with a getting a shower and that he observed Mr. Pritchard "screaming with pain" both on this occasion and when Mr. Pritchard was transported from Judicial Intake to the PCDF. No allegations are provided with respect to Deputy Ward's actual or constructive knowledge of any suicidal statements by Mr. Pritchard or other information from which he might infer a risk of self-harm. Nor indeed did such self-harm take place until after Deputy Ward's transport of Mr. Pritchard to PCDF and after two separate statements by Mr. Pritchard indicating that he was not suicidal. Awareness of physical pain does not meet the requirement that a defendant have an

awareness of a substantial risk of suicide by a specific inmate. This falls far short of stating a claim for deliberate indifference against Deputy Ward.

With respect to Deputy Duplessis, the Complaint alleges that he supplied Mr. Pritchard with a telephone that had several feet of cord and then left him alone, despite an alleged awareness of Mr. Pritchard's suicidal statements and custodial history and an awareness of Mr. Pritchard's physical pain. However, the allegation that Deputy Duplessis had such awareness was made "[u]pon information and belief." No other details are included that would shed some light as to how Deputy Duplessis gained this awareness. Accordingly, this allegation is a conclusory statement and not entitled to the presumption of truth. *See In re Lee*, 14-11872, 2019 WL 5849059 *2 (D. Kan. Nov. 7, 2019) ("A conclusory allegation made 'upon information and belief' is insufficient to make a claim plausible under *Twombly* and *Iqbal*.").

Even if Deputy Duplessis is presumed to have been aware of Mr. Pritchard's "suicidal statements and custodial history," such presumption must include Mr. Pritchard's statements that he was not suicidal and his removal from suicide observation which, as the Complaint makes clear, was his status at the time Deputy Duplessis provided with him a telephone.

As with the allegations against Deputy Ward, the allegations against Deputy Duplessis are insufficient to plausibly allege a subjective awareness of the substantial risk of suicide by Mr. Pritchard. Plaintiff's claim for constitutional violation pursuant to C.R.S. § 13-21-131 must be dismissed.

## Conclusion

WHEREFORE, for the reasons set forth above, County Defendants respectfully request that this Court enter an order dismissing the claims against them, with prejudice, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date:  January 2, 2024

s/ Ann B. Smith
Ann B. Smith
VAUGHAN & DeMURO
111 South Tejon, Suite 545
Colorado Springs, CO 80903
(719) 578-5500 (phone)
asmith@vaughandemuro.com (e-mail)
ATTORNEY FOR COUNTY DEFENDANTS

CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of January, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Phillip A. Geigle**
Phillip@pgalegal.net

**Anna L.C. Geigle**
anna@pgalegal.net

**Robert R. McLeod**
rmcleod@hallboothsmith.com

and I hereby certify that the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

[none]

s/ Ann B. Smith
Ann B. Smith